### UNITED STATES BANKRUPTCY COURT
### MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 6:14-bk-02454-KSJ |
| LG-TR-CI, INC., | ) | Chapter 11 |
| Debtor. | ) | |
| _____ | ) | |

### WELLS FARGO BANK, N.A.'S
### MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Wells Fargo Bank, N.A. ("Wells Fargo"), a national banking association, successor by merger to Wachovia Bank, National Association ("Wachovia"), successor by merger to SouthTrust Bank moves the Court pursuant to Section 362(d)(1) and (2) of the United States Bankruptcy Code and Rule 4001(a), Federal Rules of Bankruptcy Procedure, for relief from the automatic stay to foreclose on the property that secures Wells Fargo's $2.6 million loan to LG-TR-CI, Inc. (the "Debtor"), and in support says:

1.     On May 28, 2004, Wells Fargo made a loan to the Debtor, G-Gang, Inc. ("G-Gang"), Arjan P. Dodani, and Michelle A. Dodani (collectively with the Debtor and G-Gang, the "Borrowers"), evidenced by a Promissory Note in the original principal amount of $2,880,000 (the "Note"; Exhibit A). The Note is secured by a Mortgage recorded in the public records of Volusia County at Official Records Book 5336, page 4768 (the "Mortgage"; Exhibit B).

2.      Wells Fargo is the owner and holder of the Note, the Mortgage, and all other documents evidencing or securing the Loan or executed in connection with the loan (collectively, the "Loan Documents").

3.      The Loan Documents encumber, create, constitute, and perfect a mortgage, security interest, and assignment of rents, contracts, purchase agreements, and deposits in the property more particularly described in Exhibit C (the "Property").

4.      The Borrowers defaulted under the terms of the Loan Documents because (i) the Debtor failed to make any of the monthly payment due under the loan since March 2011, (ii) G-Gang mortgaged its interest in the Property without Wells Fargo's knowledge or prior written consent, and (iii) G-Gang allowed its interest in the Property to be encumbered by recorded judgment liens in favor of third parties.

5.      On November 7, 2011, Wells Fargo filed a complaint in the Volusia County Circuit Court against the Borrowers in the case styled *Wells Fargo Bank, N.A. v. LG-TR-CI, Inc., G-Gang, Inc., Arjan P. Dodani, Michelle A. Dodani, Ergun Thomas Recel, Victoria George, as Personal Representative of the Estate of Nicholas A. George, Gateway Bank of Florida, Branch Banking and Trust Company and Friends Bank*, Case No. 2011-32449-CICI to foreclose its Mortgage against the Property (the "Foreclosure Action").

6.      On April 1, 2013, the Volusia County Circuit Court entered a final judgment in the Foreclosure Action in favor of Wells Fargo and against the Borrowers (the "Foreclosure Judgment; Exhibit D). As of the date of the Foreclosure Judgment, the Debtor owed Wells Fargo $2,608,614.06, plus accrued interest and attorneys' fees, both of which continue to accrue.

2

7.    After being rescheduled on several occasions, the foreclosure sale was set to occur on March 6, 2014 (Fourth Amended Notice of Foreclosure Sale; Exhibit E).

8.    On March 5, 2014, the Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code (the "Petition"; ECF No. 1) for the sole and improper purpose of staying the March 6 foreclosure sale of the Property without any legitimate or feasible means to seek to reorganize.

9.    The Debtor has admitted in its Petition and schedules, filed under penalty of perjury, that its business and only asset is single-asset real estate as defined in Section 101(51B) of the Bankruptcy Code, which real estate constitutes Wells Fargo's collateral.

10.    The Debtor has further admitted in its Petition that, after payment of administrative expenses, it does not expect *any* distributions to be available for unsecured creditors. Indeed, the Debtor's schedules reflect that Wells Fargo is the Debtor's *only* creditor.

11.    Finally, the Debtor's Schedule B reflects no cash on hand and no accounts receivable, or, for that matter, any other means to fund any adequate protection payments, much less a plan of reorganization. The Debtor's Statement of Financial Affairs further concedes in response to Question 1 that it has earned zero income during 2013 through the date of the filing of this bankruptcy case.

3

## Memorandum of Law

Wells Fargo is entitled to relief from the automatic stay pursuant to Section 362(d)(1) and (2) of the Bankruptcy Code.  Section 362(d) provides in relevant part that:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay-
>
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest...
> >
> > [or]
> >
> > (2) with respect to a stay of an act against property under subsection (a) of this section, if-
> >
> > > (A) the debtor does not have an equity in such property; and
> > >
> > > (B) such property is not necessary to an effective reorganization...
>
> 11 U.S.C. § 362(d)(1) and (2).

Wells Fargo is entitled to relief from the automatic stay pursuant to Section 362(d) of the Bankruptcy Code because (i) there is no equity in the Property, (ii) the Debtor cannot provide Wells Fargo with adequate protection of its collateral, (iii) the Property is not necessary for an effective reorganization because the Debtor has no income; and (iv) cause otherwise exists because the Debtor filed its Petition in bad faith.  Wells Fargo "has the burden of proof on the issue of the debtor's equity in the

4

property," and the Debtor "has the burden of proof on all other issues." 11 U.S.C. §
362(g).

A.      *The Debtor does not have any equity in the Property.*

"The Bankruptcy Courts have uniformly held no equity exists in property
where the claims secured by the property exceed the value of the property." *See In re
Caldwell*, 457 B.R. 845, 853 (Bankr. M.D. Fla. 2009). According to the Debtor's
schedules, the Debtor owes Wells Fargo $2.63 million, but the Property is worth only
$1.6 million. *See* Debtor's Schedule D (ECF No. 1). Moreover, the Debtor owns
only a 42% interest in the Property, which the Debtor values at $668,000. *See*
Debtor's Schedule A (ECF No. 1). As a result of the Debtor's admissions, Wells
Fargo has met its burden of proving there is no equity in the Property.

B.      *The Debtor cannot provide adequate protection to Wells Fargo.*

The Debtor has the burden of proving he can adequately protect Wells Fargo.
*See In re Automatic Voting Mach. Corp.*, 26 B.R. 970, 972 (Bankr. W.D. N.Y. 1983).
The Debtor does not have the ability to adequately protect Wells Fargo's interest in
the Property. The Debtor's schedules and statement of financial affairs reflect that the
Debtor does not have cash on hand, nor accounts receivable, nor is it or has it
generated *any* income through the present, and has not generated any income since
*2012,* when the Note and Mortgage went into default. Statement of Financial Affairs,
§ 1 (ECF No. 1). These admissions also prove Wells Fargo is entitled to relief from
the automatic stay.

C.    *The Property is not necessary to an effective reorganization of the Debtor.*

Wells Fargo is also entitled to relief from the automatic stay because the Property is not necessary to an effective reorganization of the Debtor. The Debtor bears the burden of proving there is a reasonable possibility of a successful reorganization within a reasonable time and that the property is necessary for such reorganization. 11 U.S.C. § 362(g) and *United Sav. Ass'n. of Tex. v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 375-76 (1988). Because the Debtor has no income, the Property is not necessary to the effective reorganization of the Debtor; reorganization is not even a possibility. Accordingly, Wells Fargo is entitled to relief from the automatic stay to foreclose on the Property pursuant to Section 362(d)(2).

D.    *The stay should be lifted because the Debtor filed its Petition in bad faith.*

The stay should be lifted "for cause" pursuant to 11 U.S.C. § 362(d)(1) because the Debtor filed its Petition in bad faith. In *Phoenix Piccadilly, Ltd. v. Life Ins. Co. of Va. (In re Phoenix Piccadilly, Ltd.),* 849 F.2d 1393 (11th Cir. 1988), the Eleventh Circuit found that the following factors evidence that a petition is filed in bath faith and give cause terminating the automatic stay:

> (i) The Debtor has only one asset, the Property, in which it does not hold legal title;
>
> (ii) The Debtor has few unsecured creditors whose claims are small in relation to the claims of the Secured Creditors;
>
> (iii) The Debtor has few employees;

6

(iv) The Property is the subject of a foreclosure action as a result of arrearages on the debt;

(v) The Debtor's financial problems involve essentially a dispute between the Debtor and the Secured Creditors which can be resolved in the pending State Court Action; and

(vi) The timing of the Debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the Debtor's secured creditors to enforce their rights.

*In re Phoenix Piccadilly, Ltd.*, 849 F.2d at 1394-95.

In this case, *all* of the relevant *Piccadilly* factors indicate the Debtor filed its Petition in bad faith, which is, by itself, cause for lifting the stay. The Debtor has only one asset, the Property which is the subject to Wells Fargo's Foreclosure Judgment and has no equity. The Debtor's Schedules show that Wells Fargo is the Debtor's *only* creditor. The Debtor has *no* employees. The dispute between the Debtor and Wells Fargo is nothing more than a classic two-party dispute, which can and should be resolved in state court. The fact that the Debtor filed its Petition the day before the Property was to be sold in a foreclosure sale evidences the Debtor filed its Petition with the "intent to delay or frustrate" Wells Fargo's legitimate effort to foreclose its Mortgage. *Piccadilly* at 1395.

These facts show that the Debtor filed its Petition in bad faith and therefore, applying the *Piccadilly* factors, cause exists to lift the stay so that Wells Fargo can complete the foreclosure sale of the Property.

WHEREFORE, Wells Fargo respectfully requests the Court enter an Order granting (i) Wells Fargo relief from the automatic stay to foreclose on the Property,

(ii) waiving the 14 day stay of the order lifting the stay as permitted by Rule 4001(a)(3), Federal Rules of Bankruptcy Procedure, and (iii) granting such further relief as the Court deems appropriate.

SMITH HULSEY & BUSEY

By:    *s/ Allan E. Wulbern*
　　　　Allan E. Wulbern

Florida Bar Number 175511
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)
awulbern@smithhulsey.com

Attorneys for Wells Fargo Bank, N.A.

## **Certificate of Service**

I hereby certify that a copy of the foregoing has been furnished by mail to LG-TR-CI, Inc., 777 Main Street, Daytona Beach, Florida 32118, Walter J. Snell, Esq., Snell and Snell, P.A., 436 Peninsular Drive, Daytona Beach, Florida 32118, United States Trustee, Office of the United States Trustee, George C. Young Federal Building, 400 West Washington Street, Suite 1100, Orlando, Florida 32801 and by mail or CM/ECF electronic notification to those parties listed on the attached Local Rule 1007-2 Parties in Interest List, this 10th day of March, 2014.

_s/ Allan E. Wulbern_
Attorney

00863537

Label Matrix for local noticing
113A-6
Case 6:14-bk-02454-KSJ
Middle District of Florida
Orlando
Mon Mar 10 13:29:38 EDT 2014

LG-TR-CI, Inc.
777 Main Street
Daytona Beach, FL 32118-4206

Archie & Michelle Dodani
2521 N. Halifax Avenue
Daytona Beach, FL 32118-3241

Ergun T. Recel
4688 Atlantic Avenue
Ponce Inlet, FL 32127-7004

Florida Department of Revenue
Bankruptcy Unit
Post Office Box 6668
Tallahassee FL 32314-6668

G-Gang, Inc.
c/o Mel Stack, Esq.
444 Seabreeze Blvd, #1003
Daytona Beach, FL 32118-3953

Internal Revenue Service
Post Office Box 7346
Philadelphia PA 19101-7346

Securities Exchange Commission
175 West Jackson St
Suite 900
Chicago IL 60604-2908

Volusia County Tax Collector
123 West Indiana Avenue
Room 103
Deland FL 32720-4615

Wells Fargo Bank
c/o Harry M Wilson III Esq
225 Water St Ste 1800
Jacksonville FL 32202-5182

World of Choppers, LLC
37 Sundunes Circle
Port Orange, FL 32127-7053

Walter J Snell +
Snell & Snell, P.A.
436 N Peninsula Drive
Daytona Beach, FL 32118-4038

United States Trustee - ORL +
Office of the United States Trustee
George C Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801-2217

Timothy S Laffredi +
Office of the United States Trustee
400 W. Washington St., Suite 1100
Orlando, FL 32801-2440

Note: Entries with a '+' at the end of the
name have an email address on file in CMECF

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Karen S. Jennemann
Orlando

End of Label Matrix
Mailable recipients    14
Bypassed recipients     1
Total                  15

*bonk pkg 6988134/*

Loan # 1000596681-18

## PROMISSORY NOTE

| $2,880,000.00 | Daytona Beach, Florida | May 28, 2004 |
|---|---|---|
| | City     State | Date |

For value received, the undersigned (whether one or more, hereinafter called the ("Obligors") promise(s) to pay to the order of SOUTHTRUST BANK (hereinafter called the "Bank" or, together with any other holder of this note, the "Holder"), at any office of the Bank in VOLUSIA  COUNTY, FLORIDA or at such other place as the Holder may designate, the principal sum of  Two Million Eight Hundred Eighty Thousand and No/100 ($2,880,000.00  together with interest thereon at the rate and on the date(s) provided below from the date of this note (or other interest accrual date shown below) until maturity, and with interest on the unpaid principal balance after maturity, or upon default, at the highest lawful rate per annum or the maximum rate allowed by law, whichever is less until said indebtedness is paid in full.   Interest will accrue beginning on the date of this note unless another date is shown here.

**INTEREST RATE.**    Interest from date at 6.85% fixed for fifteen (15) years, with a 20 year amortization.

This first payment due  under this Note shall be payable on June 28, 2004, and continue on the same day of each month thereafter, for a period of 15 years,  until May 28, 2019   when the entire balloon balance shall be due in full.   The  payments shall be  based on a twenty-year amortization.  Payments including principal and interest shall be  fixed at $ 22,070.04  per month.   The Loan shall be due and payable in full at maturity on the 180th month.  Based on satisfactory payment history during the first balloon period, the borrower will have the option of renewing the loan at maturity.  Obligors may prepay this note in full at any  time without penalty.

Interest on the principal sum will be calculated at the rate set forth above on the basis of a  360 day year and the actual number of days elapsed by multiplying the principal sum by the per annum rate set forth above, multiplying the product thereof by the actual number of days elapsed, and dividing the product so obtained by  360.

**LOAN FEE.  (This provision applicable only if completed):**
A loan fee  in the amount of $10,800.00  has been included in the amount of this note and paid to the Bank from the loan proceeds paid to the Bank by cash or check at closing.  The loan fee is earned by the Bank when paid and is not subject to refund except to the extent required by law.

**LATE CHARGE.**  If any scheduled payment is in default 10 days or more, Obligors agree to pay a late charge equal to 5% of the amount of the payment which is in default, but not less than $.50 or more than the maximum amount allowed by applicable law.

**PREPAYMENT.**  There will be no prepayment penalty for partial repayment of principal at any time, however, a prepayment would apply if the loan is paid off by financing from another financial institution within the first five (5) years of the loan.   Any prepayment will not alter the remaining repayment terms.

**PROHIBITION OF NEGATIVE AMORTIZATION.** The scheduled payment amount referred to in the payment schedule above has been computed based upon a fixed interest rate of 6.85% over a  20 year amortization period. If, during the  term of the Loan, the scheduled payment amount is insufficient to fully amortize  interest, the schedule payment amount will be increased by an amount necessary to insure full interest amortization.

**COLLATERAL.** This note is secured by every security agreement, pledge, assignment, stock power, mortgage, deed of trust, security deed and/or other instrument covering personal or real property (all of which are hereinafter included in the term "Separate Agreements") which secures an obligation so defined as to include this note, including without limitation, all such Separate Agreements which are of even date herewith and/or described in the space below, in addition, as security for the payment of any and all liabilities and obligations of the Obligors to the Holder (including this note and the indebtedness evidenced by this note and all extensions, renewals, and modifications thereof, and all writings delivered in substitution therefore) and all claims of every nature of the Holder against the Obligors, whether present or future, and whether joint, several, absolute, contingent, matured, liquidated, unliquidated, and direct or indirect (all of the foregoing are hereinafter included in the term

## EXHIBIT A

"Obligations") the Obligors hereby assign to the Holder and grant to the Holder a security interest in and security title to the property (the "Collateral") described below.

See Attached Exhibit "B"

The Obligors are jointly and severally liable for the payment of this note and have subscribed their names hereto without condition that anyone else should sign or become bound hereon and without any other condition whatever being made. The provisions printed on the attached page are a part of this note. The provisions of this note are binding on the heirs, executors, administrators, successors and assigns of each and every Obligor and shall inure to the behalf of the Holder, its successors and assigns. This note is executed under the seal of each of the Obligors and of the endorser, if any.

CAUTION-IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

LG-TR-CI, INC., a Florida corporation,

by_____(Seal)
ERGUN THOMAS RECEL,  President


G—GANG, INC., a Florida corporation,

by_____(Seal)
NICHOLAS A. GEORGE, President

_____(Seal)
ARJAN A. DODANI

_____(Seal)
MICHELLE A. DODANI

No._____

Officer_____

Branch_____

"Documentary stamps in the amount of
$ 10,080.00 have been affixed to
the mortgage and canceled."

## EXHIBIT "B" TO PROMISSORY NOTE

(a)  all easements and other rights now or hereafter made appurtenant to the real property described on Exhibit B ("Real Property");

(b)  all goods, inventory, intangible personal property, licenses (including without limitation, liquor licenses), apparatus, machinery, equipment, furnishings, fixtures, appliances, and air conditioning and heating equipment, furniture, freezing equipment, and other property of every kind and nature whatsoever owned by Mortgagor/Debtor, or in which Mortgagor/Debtor has or shall have an interest, now or hereafter located upon the Real Property, or appurtenant thereto, and usable in connection with the Real Property, and the right, title and interest of Mortgagor/Debtor in and to any of the equipment, which may be subject to any security agreements (as defined in the Uniform Commercial Code).

(c)  all awards or payments, including interest thereon, which may be made with respect to the Real Property, whether form the exercise of the right of eminent domain (including any transfer made in lieu of the exercise of said right), or for any other injury to or decrease in the value of the Real Property.

(d)  all leases and other agreements affecting the use or occupancy of the Real Property now or hereafter entered into and the right to receive and apply the rents, issues and profits of the Real Property, and any security deposits paid in connection therewith.

(c)  all rights of Mortgagor/Debtor in and to all present and future fire, flood, liability and/or hazard insurance policies pertaining to all or any portion of the Real Property and/or any items covered by this instrument, including without limitation any unearned premiums and all insurance proceeds or sums payable in lieu of or as compensation for the loss of or damage to all or any portion of the Real Property and/or any items covered by this instrument.

(f)  the right (but not the obligation) in the name and on behalf of Mortgagor/Debtor to appear in and defend any action or proceeding brought with respect to the Real Property and to commence any action or proceeding to protect the interest of the Mortgagee/Secured Party in the Real Property.

(g)  all tenements, hereditaments, easements, riparian or other rights and appurtenances thereunto belonging or in any wise appertaining, including all right, title and interest of Mortgagor/Debtor in and to the underlying title of any roads or other dedicated area abutting the Real Property, and the reversions, remainders, rents, issues and profits thereof, and all after acquired title of Mortgagor/Debtor in the Real Property.

(h)  all abstracts of title, contract rights, management, franchise and service agreements, accounts, occupancy, permits and licenses, building and other permits, governmental approvals, licenses, agreements with utilities companies, water and sewer capacity reservation agreements, bonds, governmental applications and proceedings, feasibility studies, maintenance and service contracts, marketing agreements, development agreements, surveys, engineering work, architectural plans and engineering plans, site plans, landscaping plans, engineering contracts, architectural contracts, and all other contracts respecting the Real Property and all other consents, approvals and agreements which Mortgagor/Debtor may now or hereafter have in connection with the Real Property and/or any improvements constructed thereon, and the deposits, down payments and profits paid or deposited thereunder now existing or hereafter obtained by or on behalf of Mortgagor/Debtor;

(i)  all sanitary and storm sewer, water and utility service agreements as to which Mortgage/Debtor is a party or beneficiary,

(j)  all building materials, appliances and fixtures now owned or hereafter to be acquired by or on behalf of Mortgagor/Debtor and intended for use in the construction of or incorporated, annexed to, or located in the buildings and improvements to be constructed on the Real Property or any part thereof. Said materials and personal property shall include, but not be limited to, lumber, plaster, cement, shingles, roofing, plumbing fixtures, pipe lath, wallboard, cabinets, nails, sinks, toilets, furnaces, heaters, brick, tile, water heaters, screens, window frames, glass doors, flooring, paint, lighting fixtures and unattached refrigerating, cooking, heating and ventilating appliances and equipment, kitchen goods, hotel goods, restaurant goods, bar goods, tools, lawn equipment, floor coverings.

(k)  any monies and any escrow, loans in process and interest accounts established or accrued pursuant to that certain Real Estate Mortgage, Collateral Assignment of Rents and Leases and Security Agreement encumbering the Real Property made by Mortgagor/Debtor in favor of Mortgagee/Secured Party,

(l)  any property or other things of value acquired with or paid for by any future advances pursuant to the said Mortgage.

(m)  all contracts of sale and purchase agreements respecting the Real Property, all contracts for deed and any notes and mortgages executed and delivered to Mortgagor/Debtor in connection with any contracts for deed otherwise, and any other contracts entered into by Mortgagor/Debtor respecting or relating in any manner to the Real Property.

(n)  all income and profits due or to become due under any contracts of sale and purchase respecting the Real Property, hereafter obtained by or on behalf of Mortgagor/Debtor.

(o)  all refunds of property taxes relating to the Real Property or any other property covered by this financing statement,

(p)  all accounts receivable arising from operations conducted at the Real Property.

(q)  all of the water, sanitary and storm sewer systems now or hereafter owned by the Mortgagor/Debtor which are now or hereafter located by, over, or upon the Real Property or any part or parcel thereof, and which water system includes all water mains, service laterals, hydrants, valves and appurtenances, and which sewer system includes all sanitary sewer lines, including laterals, manholes and appurtenances.

(r)  all of the right, title and interest of the Mortgagor/Debtor in and to any trademarks, trade names, names of businesses, or fictitious names of any kind used in conjunction with the operation of any business or endeavor located on the Real Property.

(s)  all of Mortgagor/Debtor's interest in all utility security deposits or bonds on the Real Property or any part or parcel thereof.

(t)  any and all balances, credits, deposits, accounts or monies of the Mortgagor/Debtor and all guarantors and all other such properties and securities then or thereafter established with or in the possession of the Mortgagee/Secured Party, and

(u)  all warranties, guaranties, instruments, documents, chattel papers and general intangibles relating to or arising from the foregoing collateral, now owned or hereafer acquired by Mortgagor/Debtor.

(v)  all rights, title and interest of Mortgagor/Debtor in and arising out of declaration of covenants, restrictions and easements which rights include, but are not limited to, those rights of the Mortgagor/Debtor set forth in (I) any certain articles of incorporation of a homeowner's association, and (ii) any bylaws of a homeowners association, and all of the rights and benefits therefrom.

Together with all substitutions for, alterations, and replacements of any of the foregoing and any and all proceeds (whether cash proceeds or noncash proceeds), products, renewals accessions and additions or any of the foregoing.

06/10/2004 08:31 AM
Doc Stamps 10080.00
Intangible Tax 5760.00
Instrument# 2004-141424
Book: 5336
Page: 4768

## REAL ESTATE MORTGAGE AND SECURITY AGREEMENT
### and
## COLLATERAL ASSIGNMENT OF RENTS AND LEASES

Date:                May 28, 2004


Mortgagor:           LG-TR-CI, INC., a Florida corporation;  G-GANG, INC., a Florida corporation;
                     ARJAN P. DODANI and MICHELLE A. DODANI, husband and wife,


Mortgagee:           SOUTHTRUST BANK
                     1060 West International Speedway Boulevard
                     Daytona Beach, Fl 32114

Amount of initial indebtedness secured hereby:

Two Million Eight Hundred Eighty Thousand and No/100 ($2,880,000.00)

Date final payment is due:    See Maturity Date below

Maturity Date:  Note in the Loan Principal Amount of ( $2,880,000.00) shall mature on May 28, 2019,
 copy of said note is attached hereto as Exhibit "C"

Mortgaged Property:  As described herein including the real property legally described on Exhibit "B"
attached hereto and made a part hereof.

### THIS IS A PURCHASE MONEY FIRST MORTGAGE

1.  Mortgage.  In consideration of the Loan herein described and evidenced by a promissory note of
even date herewith (the "Note") and other valuable consideration, the receipt and sufficiency of which is
hereby acknowledged by the Mortgagor, Mortgagor, on the date stated above, does hereby grant,
bargain, sell, convey, assign, transfer, pledge, mortgage and set over unto Lender, its successors in title
and assigns as their interest may appear, the Mortgaged Property herein described and identified by the
terms and provisions of this Mortgage, Collateral Assignment of Rents and Leases and Security
Agreement (sometimes collectively referred to herein as the "Mortgage").

2.  Improvements, fixtures, etc.  This Mortgage extends to and shall encumber all buildings,
improvements, fixtures or appurtenances now or hereafter erected or existing upon the Mortgaged
Property, including all utility lines and equipment, all power systems, machines, appliances, fixtures and
appurtenances, even though they be detached or detachable, all of which shall be deemed part of the
Mortgaged Property.

3.  Rents and Profits.  This Mortgage shall extend to and encumber (as more particularly set forth in
paragraph 14 herein which, by this reference, is incorporated herein) all rents, issues, profits, proceeds,
and revenues derived from the Mortgaged Property all of which shall be deemed part of the Mortgaged
Property.

4.  Security interest in personalty.  This Mortgage shall act as a security agreement and provide for a
security interest in all rights and ownership interests of Mortgagor in and to the property (tangible and
intangible) more particularly described and set forth in that certain UCC-1 Financing Statement, (if

### EXHIBIT B

applicable) including Exhibit "A" thereof, of even date herewith, executed by Mortgagor (as Debtor) in favor of lender (as Secured Party) and Public Records of Volusia County, Florida, which by this reference is incorporated herein and made a part hereof, Mortgagor (Debtor) hereby grants to Lender (Secured Party) a security interest in all personal property (both tangible and intangible) described and referred to Exhibit "A", as aforesaid, and such property shall be a part of and encompassed within the term Mortgaged Property as used herein. This Mortgage is a self-operative security agreement with respect to such Mortgaged Property, but Mortgagor agrees to execute and deliver on demand such other security agreements, financing statements and other instruments as Lender may request in order to perfect its security interest or to impose the lien hereof more specifically upon any such Mortgaged Property. Lender shall have all the rights and remedies in addition to those specified herein of a secured party under the Uniform Commercial Code.

5. Secured Indebtedness; Future advances. This Mortgage shall secure (a) the initial indebtedness of Mortgagor to Lender, as evidenced by a negotiable promissory note of even date herewith and payable to Lender in the amount specified above (b) any future advances made by Lender to Mortgagor, and (c) all other indebtedness of Mortgagor (and each of them, if more than one) to Lender, however and wherever incurred or evidenced, whether primary, secondary, direct, indirect, absolute, Contingent, sole, joint or several, due or to become due, or which may be hereafter contracted or acquired, whether arising in the ordinary course of business or otherwise including, without limitation, as expressly set forth herein (collectively the "Secured indebtedness".) The total amount of indebtedness secured hereby may be increased from time to time, pursuant to modification and future advance agreement(s) between Lender and Mortgagor and containing terms and provisions acceptable to Lender, provided, however, this Mortgage shall not secure any future advances made more than twenty years from the date hereof.

6. Payment of Secured Indebtedness. Mortgagor shall pay all Secured indebtedness and perform all obligations secured hereby promptly when due.

7. Title covenants. Mortgagor covenants that the Mortgaged Property is free from all encumbrances (other than this Mortgage) except as may be specifically stated herein, that Mortgagors have full right to encumber the Mortgaged Property and title is vested in Mortgagor, and that Mortgagor hereby fully warrants the title to the Mortgaged Property and will defend the same against the lawful claims of all persons whomsoever.

8. Maintenance and repair. Mortgagor shall permit, commit, or suffer no waste, impairment, or deterioration of the Mortgaged Property. Mortgagor shall maintain the Mortgaged Property in good condition and repair. If Mortgagor fails to do so, then Lender, without waiving the option to foreclose, may take some or all measures that Lender reasonably deems necessary or desirable for the maintenance, repair, preservation, or protection of the Mortgaged Property, and any expenses reasonable incurred by Lender in so doing shall become part of the indebtedness secured hereby shall at the option of Lender become immediately due and payable, and shall bear interest at the rate specified in any note evidencing any indebtedness secured hereby. Lender shall have no obligation to care for and maintain the Mortgaged Property, or having taken some measures therefor, to continue the same or take other measures.

9. Inspection. Lender and Lender's representatives may enter upon the Mortgaged Property for inspection at all reasonable times and in a reasonable manner, both before and after the occurrence of a Default.

10. Hazard insurance. If any buildings or other improvements now or hereafter constitute part of the Mortgaged Property, Mortgagor shall keep the same insured against loss or damage by fire and other hazards included within the terms "extended coverage" and against such other hazards as Lender

may require, for the full insurable value of the Mortgaged Property, but in no event less than full insurable value with an insurer having an "A" or "A+" rating with a classification or at least a "Class VII" according to a current Best's Key Rating Guide. The policy or policies of insurance shall contain a standard mortgagee clause in favor of Lender and shall be delivered to Lender. Mortgagor shall pay all premiums and charges for the maintenance and renewal of the insurance, and shall furnish Lender with receipts and proofs thereof not less than ten (10) days before the expiration thereof, without notice or demand from Lender. If Mortgagor fails to do so, then Lender, without waiving the option to foreclose, may obtain such insurance for the protection of Lender, and any expenses reasonably incurred by Lender in so doing shall become part of the indebtedness secured hereby, shall at the option of Lender, become immediately due and payable, and shall bear interest secured hereby, shall, at the option of Lender, become immediately due and payable, and shall bear interest at the highest lawful rate specified in any note evidencing any indebtedness secured hereby, In the event of loss, the insurance proceeds shall be applied by Lender to the reduction of the Indebtedness secured hereby, or to the restoration and repair of the Mortgaged Property, at the option of Lender. Lender shall have the full power to settle or compromise claims under all policies and to demand, receive, and receipt for all moneys becoming payable thereunder. In the event of foreclosure of this Mortgage or transfer of the Mortgaged Property in full or partial satisfaction of the indebtedness secured hereby, all interest of Mortgagor in the policy or policies of insurance (including any claim to proceeds attributable to losses therefore occurring but not yet paid to Mortgagor) shall pass tot he purchaser, grantee, or transferee.

11.    Eminent domain.  This Mortgage extends to and shall encumber any judgments, awards, damages, and settlements hereafter rendered or paid and resulting from condemnation proceedings with respect to the Mortgaged Property or the taking of the Mortgaged Property or any part thereof under the power of eminent domain, and Lender may require that any sums payable to Mortgagor and arising out of the power of eminent domain with respect to the property shall be applied to the indebtedness secured hereby.

12. Taxes, assessments and liens.  Mortgagor shall pay all taxes, assessments, liens and other charges upon or with respect to the Mortgaged Property before the same become delinquent, and shall furnish Lender with receipts and proofs thereof at least ten (10) days before the last day allowed for payment free from penalty without notice or demand from Lender. If Mortgagor fails to do so, then lender, without waiving the option to foreclosure, may pay the same together with any penalty that may have accrued thereon, and with any expense attending the same, including the reasonable charge for services of counsel, or for any person employed to aid in the discharge or in the matter of the adjustment (thereof, or for advice in respect thereto and any amounts so paid shall become part of the indebtedness secured hereby, shall bear interest at the highest lawful rate.

13. Environmental condition of Mortgaged Property; indemnification.
    (i) Mortgagor warrants and represents to Lender that:

    (a) The Mortgaged Property described herein is now and at all times hereafter will continue to be in full compliance with regulations (collectively, "Environmental Laws"), including but not limited to, the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA") Public Law No. 96-510.94 Stat. 2767.42 U.S.C. 9601 et seq., and the Superfund Amendments and Reauthorization Act of 1986, ("SARA"), Public Law No. 99-499,100 Stat. 16.13

    (ii) The Mortgagor has received no notice from any governmental entity of the existence or suspected or alleged existence of any violation of any Environmental Law; and

    (iii) (a) As of the date hereof, there are no hazardous materials, substances, wastes or other

3

BOOK: 5336
PAGE: 4771

environmentally regulated substances, including, without limitation, any materials containing asbestos (collectively "Hazardous Materials") located on, in or under the Mortgaged Property or used in connection therewith, or (B) Mortgagor has fully disclosed to Lender, in within, the existence, extent and nature of any such Hazardous Materials, which Mortgagor is legally authorized and empowered to maintain on, in or under the Mortgaged Property or use in connection therewith, and Mortgagor has obtained and will maintain all licenses, permits and approvals with respect thereto.

(b) Mortgagor covenants to promptly notify Lender of any changes in the nature or extent of any Hazardous Materials existing on, in or under the Mortgaged Property or use in connection therewith, and will transmit to Lender copies of any citations, order, notices or other material governmental or other communications received with respect to any other Hazardous Materials affecting the Mortgaged Property.

(c) Mortgagor shall not permit the use, storage, manufacture or production of Hazardous Material on, in or under, or in connection with the Mortgaged Property except as specifically permitted in writing by Lender, in its sole discretion and then only in strict conformity with all Environmental laws.

(d) Mortgagor shall indemnify and hold Lender harmless from and against any and all damages, penalties, fines, claims, liens, suits, liabilities, costs (including clean up costs), judgements    and expenses (including attorneys', consultants' or experts' fees, costs and expenses) of every kind and nature suffered by or asserted against Lender as a direct or indirect result of any warranty or representation made by Mortgagor in this section being false or untrue in any material respect or any requirement under any law, regulation or ordinance, local, state or federal, which requires the elimination or removal of any Hazardous Materials, substances, wastes or other environmentally regulated substances by Lender, Mortgagor or any transferee of Lender or Mortgagor or imposes any fines, liabilities or other penalty on any such person. The indemnities herein shall be without regard to any fault of Mortgagor.

(e) Lender shall have the right to require from time to time such environmental audits or inspections as it may deem necessary to ensure compliance with this section and payment of the cost of any such audits or inspections shall be the responsibility of the Mortgagor.

(f) Mortgagor's obligations hereunder shall not be limited to any extent by the terms of the obligations secured hereby, and, as to any act or occurrence prior to payment in full and satisfaction of Mortgagor's obligations which gives rise to liability hereunder, shall continue, survive and remain in full force and effect notwithstanding payment in full and satisfaction of such obligations or foreclosure under this Mortgage or delivery of a deed in lieu of foreclosure.

14. Collateral Assignment of Rents and Leases. The Mortgagor does hereby assign to Lender its entire interest and position as lessor by virtue of its ownership in the premises with respect to all leases or rental arrangements executed or delivered (both oral and written) hereafter made or existing, hereinafter collectively referred to as "leases" with respect to all or any part of the premises.

The Mortgagor does hereby empower Lender, its agents or attorneys to collect, sue for, settle, compromise, and give acquittances for all of the rents that may become due under said leases and avail itself of and pursue all remedies for the enforcement of said leases and Mortgagor's rights in and under said leases as the Mortgagor might have pursued but for this Assignment.

The Mortgagor warrants that it is the sole owner of the entire lessor's interest in the leases existing on date hereof, if any; that such leases are or will be valid and enforceable and have not been altered, modified or amended in any manner whatsoever from the form of lease or leases submitted by

4

Book: 5336
Page: 4772

Mortgagor to Lender and approved by Lender that no party is in default under any of the terms, covenants or conditions in any of such leases, that no rent reserved in the leases has been assigned or anticipated, and that no rent for any period subsequent to the date of this Assignment has or shall be collected in advance of the time when the same is due under the terms of such leases.

With respect to any new leases entered into after the date hereof, the Mortgagor warrants that as of that time (i) that Mortgagor has not and shall not assign or pledge that same or any interest therein, (ii) that rent shall not be paid by any of the lessees for more than two (2) months in advance, and (iii) that the payment of rents to accrue under said leases shall not be discharged or compromised by the Mortgagor directly or indirectly by assuming any leases's obligations with respect to other premises.

The Mortgagor agrees:

a.    That all leases approved by Lender shall remain in full force an effect irrespective of any merger of the interest of the lessors and lessee thereunder, and

b.    That if the leases provided for the abatement of rent during repair of the demised premises by reason of fire or other casualty, that Mortgagor shall furnish rental insurance to Lender, the policies to be in an amount and form and written by such insurance companies as shall furnish rental insurance to Lender, the policies to be in an amount and form and written by such insurance companies as shall be satisfactory to Lender, and

c.    Except in the ordinary course of business, not to terminate, modify, or amend said leases or any of the terms thereof, or grant any concessions in connection therewith, either orally or in writing, or to accept a surrender thereof without the written consent of Lender and that any attempted termination, modification, or amendment of said leases without such written consent shall be null and void, and

d.    Not to collect any of the rent, income, and profits arising or accruing under said leases for more than two (2) months in advance of the time when the same become due under the terms thereof, and

e.    Not to discount any future accruing rents, and

f.    Not to execute any other assignments of said leases or any interest therein or any of the rents thereunder, and

g.    To perform all of Mortgagor's covenants and agreements as lessor under said leases and not to suffer or permit to occur any release of, liability of the lessees, or any rights to the lessees to withhold payment of rent; and to give prompt notices to Lender of any notice of default on the part of Mortgagor with respect to said leases received from the lessees thereunder, and to furnish Lender with complete copies of said notices, and

h.    If so requested by Lender to enforce said leases and all remedies available to the Mortgagor against the lessees, in case of default under leases by the lessees, and

i.    That none of the rights or remedies of Lender under the mortgage from the Mortgagor to Lender shall be delayed or in any way prejudiced by this Assignment, and

j.    That notwithstanding any variation of the terms of the mortgage or any extension of time for payment thereunder or any release of part or parts of the lands conveyed thereunder, the leases and benefits hereby assigned shall continue as additional security in accordance with the terms hereof, and

k.    Except in the ordinary course of business, not to alter or change the terms of any guarantees without the prior written consent of Lender, and

l.    Not to consent to any assignments of said leases, or subletting thereunder, whether or not in accordance with their terms without the prior written consent of Lender, and

m.    Not to request, consent to, agree to, or accept a subordination of said leases to any other mortgage or other encumbrance now or hereafter affecting the premises, and

n.    Except in the ordinary course of business, not to execute any right of election, whether specifically set forth in any such lease or otherwise, which would in any way diminish the lessee's liability or have the effect of shortening the stated terms of the lease, and

o.    Except in the ordinary course of business, not to sell, transfer, or remove any personal property now or hereafter located on the above-described premises, unless such action results in substitution or

replacements with similar items, owned by Mortgagor and not otherwise encumbered, of equal value, without the prior written consent of Lender, and

    p.    To furnish Lender with a current rent roll upon request, and

    q.    To furnish Lender, upon request, with true and correct copies, as signed, of all leases.

This Assignment is given as collateral security for the payment of Note. All amounts collected under this Assignment, after deducting the expenses of collection, shall be applied on account of the indebtedness evidenced by Note and secured by this mortgage, or in any general assignments of rents relating to said premises. Nothing herein contained shall be construed as constituting Lender a trustee or mortgagee in possession. In the event said mortgage is fully paid and satisfied, canceled, and released, then the releasing of said mortgage shall constitute a satisfaction, cancellation, and release of this Assignment.

Upon issuance of a deed or deeds pursuant to foreclosure of the mortgage, all right, title, and interest of the Mortgagor in and to said leases shall, by virtue of this instrument, thereupon vest in and become the absolute property of the grantee or grantees in such deed or deeds without any further act or assignment by the Mortgagor. Mortgagor hereby irrevocably appoint Lender, and its successor and assigns, as the Mortgagor's agent and attorney in fact to execute all instruments of assignment of further assurances in favor of such grantee or grantees in such deed or deeds, as may be necessary or desirable for such purpose. But nothing contained herein shall prevent Lender from terminating any subordinate lease through such foreclosure.

In the exercise of the powers herein granted to Lender, no liability shall be asserted or enforced against Lender, all such liability being hereby expressly waived and released by Mortgagor. The Lender shall not be obligated to perform or discharge any obligation, duty, or liability under said leases, or under or by reason of this Assignment, and the Mortgagors shall and do hereby agree to indemnify Lender for and to hold it harmless of and from any and all liability, loss, or damage which it may or might incur said leases or under or by reason of this Assignment and of and from any and all claims and demands whatsoever which may be asserted against it by reason of any alleged obligations or undertakings on its part to perform or discharge under any of the terms, covenants, or agreements contained in said leases. Should Lender incur any such liability, loss, or damage under said leases or under or by reason of this agreement, or in the defense of any such claims or demands, the amount thereof, including costs, expenses, and reasonable attorneys' fees, shall be secured hereby, and the Mortgagor shall reimburse Lender therefore immediately upon demand. Such attorneys' fees and costs shall include, but not be limited to, fees and costs incurred in any phase of litigation, including, but not limited to, all trials, proceedings, and appeals, and all appearances in and connected with any bankruptcy proceedings or creditor's reorganization proceedings.

Although it is the intention of the parties that this Assignment shall be a present assignment, it is expressly understood and agreed, anything herein contained to the contrary notwithstanding, that Lender shall not exercise any of the rights or powers herein conferred upon it until a default shall occur and be continuing under the terms and provisions of this Assignment or of the note or mortgage, but upon the occurrence and continuance of any such default, Lender shall be entitled, upon notice to the lessees, to all rents and other amounts then due under the leases and thereafter accruing, and this Assignment shall constitute a direction to and full authority to the lessees to pay all such amounts to Lender without proof of the default relied upon. The lessees are hereby irrevocably authorized to rely upon and comply with (and shall be fully protected in so doing) any notice or demand by Lender without verification of any signatures for the payment to lender of any rental or other sums which may be or thereafter become due under the leases and shall have no right or duty to inquire as to whether any default under the mortgage, note, or this Assignment has actually occurred or is then existing.

This Assignment shall include any extensions and renewals of the leases and any reference herein to

6

the said leases shall be construed as including any such extensions and renewals.

15. **Default and Remedies.**

The terms "Default" or "Defaults" or "Events of Default" wherever used in this Mortgage, shall mean, in addition to such other events or circumstances expressly described herein, any one or more of the following events:

(a) Failure by the Mortgage to pay as when due and payable any portion of the Secured Indebtedness, or

(b) Failure by the Mortgagor duly to observe or perform any other, covenant, condition or agreement of this Mortgage, Assignment of Rents and leases and Security Agreement, or and Security Agreement, or

(c) Failure by the Mortgagor to duly observe or perform any term covenant, condition or agreement as may be provided in or the occurrence of a default or event of default under any loan agreement, loan commitment letter, construction loan agreement, development loan agreement, or any other agreement or document now or hereafter securing or otherwise relating to this Mortgage or the Note secured by this Mortgage or the Mortgaged Property or the Secured Indebtedness, the terms of all of which are deemed incorporated herein and made a part thereof, or

(d) Any warranty of the Mortgagor contained in this Mortgage, or in any other document or agreement now or hereafter evidencing or securing or otherwise relating to the Note or this Mortgage or the Secure Indebtedness proves to be untrue or misleading on any material respect, or

(e) The filing by the Mortgagor or any endorser or guarantor of the Note of a voluntary petition in bankruptcy, or the filing by the Mortgagor or any endorser or guarantor of any petition or answer seeking or acquiescing in any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief for itself under any present or future federal, state or other law or regulation relating to bankruptcy, insolvency or other relief for debtors, or the Mortgagor or any endorsers or guarantors seeking or consenting to or acquiescing in the appointment of any trustee, receiver or liquidator of the Mortgagor or of endorser or guarantor or of any or all of the income, rents, issues, profits or revenues thereof, or the making by the Mortgagor or any endorser or guarantor of any general assignment for the benefit of creditors, or the admission in writing by the Mortgagor or by any endorser or guarantor of its inability to pay its debts generally as they become due, or the commission by the Mortgagor or either of them, or any endorser or guarantor of an act or bankruptcy, or

(f) The filing of a petition against the Mortgagor or any endorser or guarantor of the Note, seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal, state or other law or regulation relating to bankruptcy, insolvency or other relief for debts, or the appointment of any trustee, receiver or liquidator of the Mortgagor's or of any endorser or guarantor or of all or any substantial part of the Mortgage Property or of any or all of the income, rents, issues, profits or revenues thereof unless such petition shall be dismissed within thirty (30) days after such filing, but in any event prior to the entry of an order, judgment or decree approving such petition, or

(g) The Mortgaged Property is subjected to actual or threatened waste, or any part thereof is removed, demolished or altered without the prior written consent of Lender, or

(h) The individual Mortgagor or any endorser or guarantor of the Note dies.

16. **Receiver.** Upon the occurrence of a Default, Lender shall be entitled to the appointment of a

receiver to take charge of the Mortgaged Property, and the rents, issues, profits, proceeds, and revenues arising therefrom, and hold the same subject to the direction of a court of competent jurisdiction, regardless of the solvency of Mortgagor of the adequacy of the security.

17. **Enforcement and collection expenses.** Incident to and in connection with any Event of Default, the Mortgagor shall pay all costs, professional fees, and expenses, including attorney's fees, reasonably incurred by Lender, whether or not legal action is instituted, with respect to collection of the indebtedness secured hereby or the enforcement of Lenders rights hereunder, including but not limited to such fees, expenses, and costs incurred in any phase of litigation in the trial court or on appeal, and all matters and appearances connected with any bankruptcy or creditor's reorganization proceedings. All of such costs, fees and expenses shall become a part of the indebtedness secured hereby, shall, at the option of Lender, become immediately due and payable, and shall bear interest at the highest lawful rate.

18. **Acceleration upon Default.** If Mortgagor fails to pay any Secured Indebtedness promptly when due (or within such grace period as may be provided in the note or notes evidencing the Secured Indebtedness), or if Mortgagor materially breaches any other covenant herein or otherwise materially Defaults hereunder, then Lender may declare all indebtedness secured hereby to be accelerated and immediately due and payable, Lender's failure to declare an acceleration shall not impair the right to do so in the event of, a continuing or subsequent breach or Default.

19. **Prohibition against additional financing or other liens.** An important component of the consideration for the extension of credit evidenced by the promissory note secured by this Mortgage is the Mortgagor's equity in the Mortgaged Property and the maintenance of such equity (as increased through future appreciation, if any) during the term of this Mortgage. This is and shall remain a first Mortgage and the Mortgagor covenants and agrees not to create or permit the creation of any other Mortgage, charge, lien or encumbrance against the Mortgaged property or any portion thereof without first obtaining written consent of Lender. Any Default in the provisions of this paragraph shall entitle Lender, at its option to declare all sums secured by, this Mortgage to be immediately due and payable.

20. **Acceleration upon sale or transfer of Mortgaged Property.** If all or any part of the Mortgaged Property or an interest therein is sold or transferred by Mortgagor or without Lender prior written consent, or, if all or any portion of the corporate common (voting) stock, whether issued or treasury stock, is sold or transferred by Mortgagor or (as to the issued stock) the Guarantor(s) of this Mortgage in any manner whatsoever without Lender's prior Written Consent, in either event, Lender may, at Lender's option, declare all of the sums secured by this Mortgage to be accelerated and immediately due and payable. Lender shall have waived such option to accelerate if, and only if, prior to the sale or transfer, Lender and the person or persons to whom the property is to be sold or transferred reach agreement in writing that (i) the credit and such other matters as may be required by Lender (including, without limitation Lender's approval of the skill, knowledge, ability, business performance, and experience) of such person or persons is satisfactory to lender, and (ii) the interest payable on the sums secured by this Mortgage shall be at such rate and the principal and interest shall be payable on such terms and in such amounts as Lender in its sole discretion shall determine, and (iii) Lender shall have received payment of such amount as an assumption or other fees and Lender in its sole discretion shall determine. The limitations contained in this paragraph shall be strictly construed against the Mortgagor and Mortgagor's successor(s) in interest and in favor of Lender. Lender may deal with the successors or successors in interest without in any way discharging or reducing mortgagor's liability for Mortgagor's obligations secured hereby.

21. **No waiver.** No delay by Lender in exercising any option, right, or remedy hereunder or otherwise afforded by law shall waive or preclude the exercise thereof during the continuance of any breach or Default hereunder. No waiver by Lender of any provision, breach, or Default shall be a waiver of any

8

BOOK: 5336
Page: 4776

other provision or a consent to any subsequent breach of Default.    *read this ↓*

**22. Cross Default under other mortgages.** If the Mortgaged Property or any part thereof or any other property, real or personal, is now or hereafter encumbered by any other mortgage or security agreement held by Lender, then, at the option of Lender, any Default hereunder shall also be a Default under each and all of such other mortgages and security agreements and any Default under any of such other mortgages and security agreements shall also, at Lender's option, be a Default hereunder. Any Default by Mortgagor in any term, covenant, or provision of any other mortgage held by any other party that may now or hereafter encumber the Mortgaged Property, or any part thereof, shall, at the option of Lender, also constitute a Default hereunder.

**23. Extensions, leniency's and releases.** Lender may grant extensions of time for payment and other leniency's with respect to any indebtedness secured hereby, and may waive or fail to enforce any of Lender's rights hereunder and may release a portion or portions of the Mortgaged Property from the lien hereof, without releasing or diminishing the obligation or liability of any person constituting Mortgagor, or any Guarantor or endorser.

**24. Subrogation.** Lender shall be subrogated to the lien (notwithstanding its release of record) of any vendor, mortgagee, or other lienholder paid or discharged by the proceeds of any loan or advance made by Lender to the Mortgagor and secured hereby.

**25. Waiver of Jury Trial.**
MORTGAGOR HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT HE MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON THIS MORTGAGE, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS MORTGAGE OR ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONNECTION WITH THIS MORTGAGE, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY WITH RESPECT HERETO. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE MORTGAGEE'S ACCEPTING THIS MORTGAGE FROM MORTGAGOR.

**26. Affirmative covenants of the Mortgagor.** The Mortgagor covenants and agrees that from the date hereof until payment in full of the Secured Indebtedness:
    (a) Compliance. The Mortgagor shall comply fully with all applicable statutes, laws and regulations pertaining to the Mortgaged Property, and,
    (b) Corporate Existence. Mortgagor shall maintain the corporate existence of the corporate Mortgagor, and,
    (c) Financial Condition and Statement/Federal Tax Returns. On an annual basis, corresponding with Borrower's fiscal year-end, Borrower and Guarantors will furnish Lender with financial statements (business and personal) and tax returns in form, scope and substance satisfactory to Lender. Borrower and Guarantors agree to furnish Lender with periodic updated financial statements in such form or detail as reasonably required by Lender (which Lender may require to be certified and audited), but in any event, no later than ninety (90) days following the expiration of Borrower's and Guarantor's first fiscal year, and within ninety (90) days of expiration of each fiscal or calendar year thereafter. Borrower further agrees to provide and to cause the Guarantors to provide Lender with its/their federal tax returns not less than annually.
    In the event the documents described in this subparagraph (c) are not provided to Lender within the time provided herein, the interest rate provided in the note, secured hereby, may, at Lender's option, increase to a rate equal to _____ (__%) above SouthTrust Bank's base rate interest.

27. **Negative covenant of the Mortgagor.** The Mortgagor covenants and agrees that from the date hereof until payment in full of the principal and interest on the promissory note, unless Lender shall otherwise consent in writing, the Mortgagor shall not:

(a) Sell, lease, convey, or otherwise dispose of, any goods, inventory, equipment, machinery or other fixed assets manufactured or used in the normal conduct of business except in the ordinary course of business, and

(b) Create, assume, or permit to exist any lien, pledge, charge or other encumbrance on or against any of its assets, whether now owned or hereafter acquired, other than purchase money security interest in raw materials, equipment, machinery or other fixed assets incurred in the normal course of business.

28. **Release or satisfaction.** Whenever there is no outstanding obligation secured hereby and no commitment to make advances, Lender shall on written demand by mortgagor give a release hereof, in recordable from.

29. **Commitment Letter.** This mortgage evidences a loan made incident to that certain Commitment Letter dated April 20, 2004 which by this reference is incorporated herein. Any conflict between the provisions of this Mortgage and the Commitment Letter shall be governed by the latter.

30. **General Provisions.**
    (a) The singular shall include the plural and any gender shall be applicable to all genders when the context permits or implies.
    (b) Lender's rights expressed herein are in addition to and cumulative of any other rights and remedies provided by law or equity.
    (c) Wherever the context permits or requires, the terms "Mortgagor" and "Lender" shall extend to and include their respective successors and assigns.
    (d) Any agreement hereafter made by Mortgagor and Lender  pursuant to and as permitted by this Mortgage or the laws of Florida shall be superior to the rights of the holder of any intervening lien or encumbrance.
    (e) Time is of the essence as to all matters obligations and duties herein provided and required.

IN WITNESSES WHEREOF, Mortgagor has executed this Mortgage as of the date first stated above.

Witnesses to all parties

_Clara B Spangler_
_Clara B. Spangler_
Print or type name of witness

_Donald Passerette_
_Donald Passeretti_
Print or type name of witness

Mortgagors

LG-TR-CI, INC., a Florida corporation,

by _____ (SEAL)
ERGUN THOMAS RECEL, President

G-GANG, INC., a Florida corporation,

by _____ (SEAL)
                    NICHOLAS    A.    GEORGE,
President

10

_____ (SEAL)
ARJAN P. DODANI

_____ (SEAL)
MICHELLE A. DODANI

**STATE OF FLORIDA**
**COUNTY OF <u>VOLUSIA</u>**
The foregoing instrument was acknowledged before me by ERGUN THOMAS RECEL, as President of LG-TR-CI, INC., a Florida corporation,   who are personally known to me or has presented his  Florida Drivers License_____as identification.

_____
Notary Public
My commission expires:

**STATE OF FLORIDA**
**COUNTY OF <u>VOLUSIA</u>**
The foregoing instrument was acknowledged before me by NICHOLAS A. GEORGE, as President of  G-GANG, INC., a Florida corporation,   who are personally known to me or has presented his  Florida Drivers License_____as identification.

_____
Notary Public
My commission expires:

**STATE OF FLORIDA**
**COUNTY OF <u>VOLUSIA</u>**
The foregoing instrument was acknowledged before me by  ARJAN P. DODANI and  MICHELLE A. DODANI, husband and wife,   who are personally known to me or has presented his  Florida Drivers License_____as identification.

_____
Notary Public
My commission expires:

11

Book: 5336
Page: 4779

## EXHIBIT "A"

(a)  all easements and other rights now or hereafter made appurtenant to the real property described on Exhibit B ("Real Property");

(b)  all goods, inventory, intangible personal property, licenses (including without limitation, liquor licenses), apparatus, machinery, equipment, furnishings, fixtures, appliances, and air conditioning and heating equipment, furniture, freezing equipment, and other property of every kind and nature whatsoever owned by Mortgagor/Debtor, or in which Mortgagor/Debtor has or shall have an interest, now or hereafter located upon the Real Property, or appurtenant thereto, and usable in connection with the Real Property, and the right, title and interest of Mortgagor/Debtor in and to any of the equipment, which may be subject to any security agreements (as defined in the Uniform Commercial Code).

(c)  all awards or payments, including interest thereon, which may be made with respect to the Real Property, whether form the exercise of the right of eminent domain (including any transfer made in lieu of the exercise of said right), or for any other injury to or decrease in the value of the Real Property.

(d)  all leases and other agreements affecting the use or occupancy of the Real Property now or hereafter entered into and the right to receive and apply the rents, issues and profits of the Real Property, and any security deposits paid in connection therewith.

(c)  all rights of Mortgagor/Debtor in and to all present and future fire, flood, liability and/or hazard insurance policies pertaining to all or any portion of the Real Property and/or any items covered by this instrument, including without limitation any unearned premiums and all insurance proceeds or sums payable in lieu of or as compensation for the loss of or damage to all or any portion of the Real Property and/or any items covered by this instrument.

(f)  the right (but not the obligation) in the name and on behalf of Mortgagor/Debtor to appear in and defend any action or proceeding brought with respect to the Real Property and to commence any action or proceeding to protect the interest of the Mortgagee/Secured Party in the Real Property.

(g)  all tenements, hereditaments, easements, riparian or other rights and appurtenances thereunto belonging or in any wise appertaining, including all right, title and interest of Mortgagor/Debtor in and to the underlying title of any roads or other dedicated area abutting the Real Property, and the reversions, remainders, rents, issues and profits thereof, and all after acquired title of Mortgagor/Debtor in the Real Property.

(h)  all abstracts of title, contract rights, management, franchise and service agreements, accounts, occupancy, permits and licenses, building and other permits, governmental approvals, licenses, agreements with utilities companies, water and sewer capacity reservation agreements, bonds, governmental applications and proceedings, feasibility studies, maintenance and service contracts, marketing agreements, development agreements, surveys, engineering work, architectural plans and engineering plans, site plans, landscaping plans, engineering contracts, architectural contracts, and all other contracts respecting the Real Property and all other consents, approvals and agreements which Mortgagor/Debtor may now or hereafter have in connection with the Real Property and/or any improvements constructed thereon, and the deposits, down payments and profits paid or deposited thereunder now existing or hereafter obtained by or on behalf of Mortgagor/Debtor;

(i)  all sanitary and storm sewer, water and utility service agreements as to which Mortgage/Debtor is a party or beneficiary,

(j)  all building materials, appliances and fixtures now owned or hereafter to be acquired by or on behalf of Mortgagor/Debtor and intended for use in the construction of or incorporated, annexed to, or located in the buildings and improvements to be constructed on the Real Property or any part thereof.  Said materials and personal property shall include, but not be limited to, lumber, plaster, cement, shingles, roofing, plumbing fixtures, pipe lath, wallboard, cabinets, nails, sinks, toilets, furnaces, heaters, brick, tile, water heaters, screens, window frames, glass doors, flooring, paint, lighting fixtures and unattached refrigerating, cooking, heating and ventilating appliances and equipment, kitchen goods, hotel goods, restaurant goods, bar goods, tools, lawn equipment, floor coverings.

(k)  any monies and any escrow, loans in process and interest accounts established or accrued pursuant to that certain Real Estate Mortgage, Collateral Assignment of Rents and Leases and Security Agreement encumbering the Real Property made by Mortgagor/Debtor in favor of Mortgagee/Secured Party,

(l)  any property or other things of value acquired with or paid for by any future advances pursuant to the said Mortgage.

(m)  all contracts of sale and purchase agreements respecting the Real Property, all contracts for deed and any notes and mortgages executed and delivered to Mortgagor/Debtor in connection with any contracts for deed otherwise, and any other contracts entered into by Mortgagor/Debtor respecting or relating in any manner to the Real Property.

(n)  all income and profits due or to become due under any contracts of sale and purchase respecting the Real Property, hereafter obtained by or on behalf of Mortgagor/Debtor.

12

BOOK: 5336
PAGE: 4780

(o)  all refunds of property taxes relating to the Real Property or any other property covered by this financing statement,

(p)  all accounts receivable arising from operations conducted at the Real Property.

(q)  all of the water, sanitary and storm sewer systems now or hereafter owned by the Mortgagor/Debtor which are now or hereafter located by, over, or upon the Real Property or any part or parcel thereof, and which water system includes all water mains, service laterals, hydrants, valves and appurtenances, and which sewer system includes all sanitary sewer lines, including __, laterals, manholes and appurtenances.

(r)  all of the right, title and interest of the Mortgagor/Debtor in and to any trademarks, trade names, names of businesses, or fictitious names of any kind used in conjunction with the operation of any business or endeavor located on the Real Property.

(s)  all of Mortgagor/Debtor's interest in all utility security deposits or bonds on the Real Property or any part or parcel thereof.

(t)  any and all balances, credits, deposits, accounts or monies of the Mortgagor/Debtor and all guarantors and all other such properties and securities then or thereafter established with or in the possession of the Mortgagee/Secured Party, and

(u)  all warranties, guaranties, instruments, documents, chattel papers and general intangibles relating to or arising from the foregoing collateral, now owned or hereafer acquired by Mortgagor/Debtor.

(v)  all rights, title and interest of Mortgagor/Debtor in and arising out of declaration of covenants, restrictions and easements which rights include, but are not limited to, those rights of the Mortgagor/Debtor set forth in (I) any certain articles of incorporation of a homeowner's association, and (ii) any bylaws of a homeowners association, and all of the rights and benefits therefrom.

Together with all substitutions for, alterations, and replacements of any of the foregoing and any and all proceeds (whether cash proceeds or noncash proceeds), products, renewals accessions and additions or any of the foregoing.

Property: 777 Main Street
           Daytona Beach, FL 32119

13

Book: 5336
Page: 4781

EXHIBIT "B"

## EXHIBIT

### Legal Description
### Corbin Property

Lots 1 through 8, inclusive, Block 12, Roger's Seabreeze, according to the map or plat thereof as recorded in Deed Book "O", Page 301, Public Records of Volusia County, Florida, EXCEPTING therefrom the Southerly 12 feet thereof taken in the widening of Main Street; ALSO, Lots 5 through 7, inclusive, Block 13, Brush and Stewart's Subdivision in Seabreeze, according to the map or plat thereof as recorded in Plat Book 2, Page 187, Public Records of Volusia County, Florida.

## EXHIBIT "C"

### PROMISSORY NOTE

| $2,880,000.00 | Daytona Beach, <u>Florida</u> | <u>May 28, 2004</u> |
|---|---|---|
| | City          State | Date |

For value received, the undersigned (whether one or more, hereinafter called the ("Obligors") promise(s) to pay to the order of SOUTHTRUST BANK (hereinafter called the "Bank" or, together with any other holder of this note, the "Holder"), at any office of the Bank in <u>VOLUSIA COUNTY, FLORIDA</u> or at such other place as the Holder may designate, the principal sum of <u>Two Million Eight Hundred Eighty Thousand and No/100</u> <u>($2,880,000.00</u>  together with interest thereon at the rate and on the date(s) provided below from the date of this note (or other interest accrual date shown below) until maturity, and with interest on the unpaid principal balance after maturity, or upon default, at the highest lawful rate per annum or the maximum rate allowed by law, whichever is less until said indebtedness is paid in full.  Interest will accrue beginning on the date of this note unless another date is shown here.

**INTEREST RATE.**    Interest from date at 6.85% fixed for fifteen (15) years, with a 20 year amortization.

This first payment due under this Note shall be payable on June 28, 2004, and continue on the same day of each month thereafter, for a period of 15 years,  until May 28, 2019  when the entire balloon balance shall be due in full.   The   payments shall  be based on a twenty-year amortization.  Payments including principal and interest shall  be   fixed at $ 22,070.04  per month.  The Loan shall be due and payable in full at maturity on the 180th month. Based on satisfactory payment history during the first balloon period, the borrower will have the option of renewing the loan at maturity.  Obligors may prepay this note in full at any  time without penalty.

Interest on the principal sum will be calculated at the rate set forth above on the basis of a  360 day year and the actual number of days elapsed by multiplying the principal sum by the per annum rate set forth above, multiplying the product thereof by the actual number of days elapsed, and dividing the product so obtained by 360.

**LOAN FEE.** (This provision applicable only if completed):
A loan fee  in the amount of $10,800.00  has been included in the amount of this note and paid to the Bank from the loan proceeds paid to the Bank by cash or check at closing.  The loan fee is earned by the Bank when paid and is not subject to refund except to the extent required by law.

**LATE CHARGE.**  If any scheduled payment is in default 10 days or more, Obligors agree to pay a late charge equal to 5% of the amount of the payment which is in default, but not less than $.50 or more than the maximum amount allowed by applicable law.

**PREPAYMENT.**  There will be no prepayment penalty for partial repayment of principal at any time, however, a prepayment would apply if the loan is paid off by financing from another financial institution within the first five (5) years of the loan.  Any prepayment will not alter the remaining repayment terms.

**PROHIBITION OF NEGATIVE AMORTIZATION.** The scheduled payment amount referred to in the payment schedule above has been computed based upon a fixed interest rate of 6.85% over a  20 year amortization period. If, during the  term of the Loan, the scheduled payment amount is insufficient to fully amortize· interest, the schedule payment amount will be increased by an amount necessary to insure full interest amortization.

**COLLATERAL.** This note is secured by every security agreement, pledge, assignment, stock power, mortgage, deed of trust, security deed and/or other instrument covering personal or real property (all of which are hereinafter included in the term "Separate Agreements") which secures an obligation so defined as to include this note, including without limitation, all such Separate Agreements which are of even date herewith and/or described in the space below, in addition, as security for the payment of any and all liabilities and obligations of the Obligors to the Holder (including this note and the indebtedness evidenced by this note and all extensions, renewals, and modifications thereof, and all writings delivered in substitution therefore) and all claims of every nature of the Holder against the Obligors, whether present or future, and whether joint, several, absolute, contingent, matured, liquidated, unliquidated, and direct or indirect (all of the foregoing are hereinafter included in the term

Book: 5336
Diane M. Matousek
Volusia County, Clerk of Court
Page 4783

"Obligations") the Obligors hereby assign to the Holder and grant to the Holder a security interest in and security title to the property (the "Collateral") described below.

See Attached Exhibit "B"

The Obligors are jointly and severally liable for the payment of this note and have subscribed their names hereto without condition that anyone else should sign or become bound hereon and without any other condition whatever being made.  The provisions printed on the attached page are a part of this note.  The provisions of this note are binding on the heirs, executors, administrators, successors and assigns of each and every Obligor and shall inure to the behalf of the Holder, its successors and assigns.  This note is executed under the seal of each of the Obligors and of the endorser, if any.

**CAUTION-IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

LG-TR-CI,.INC., a Florida corporation,

by _____ (Seal)
ERGUN THOMAS RECEL,  President


G—GANG, INC., a Florida corporation,

by _____ (Seal)
NICHOLAS A. GEORGE, President

_____ (Seal)
ARJAN A. DODANI

_____ (Seal)
MICHELLE A. DODANI

No._____

Officer_____

Branch_____

Exhibit C

(the Property)


Lots 1 through 8, inclusive, Block 12, Rogers' Seabreeze, according to the map or plat thereof, as recorded in Deed Book "O", Page 301, Public Records of Volusia County, Florida, EXCEPTING, therefrom the Southerly 12 feet thereof taken in the widening of Main Street; ALSO, Lots 5 through 7, inclusive, Block 13, Brush and Stewart's Subdivision in Seabreeze, according to the map or plat thereof, as recorded in Plat Book 2, Page 187, Public Records of Volusia County, Florida.

IN THE CIRCUIT COURT, OF THE
SEVENTH JUDICIAL CIRCUIT, IN AND
FOR VOLUSIA COUNTY, FLORIDA

CASE NO.:   2011-32449-CICI
DIVISION:   32

WELLS FARGO BANK, N.A.,                    )

    Plaintiff,                             )

v.                                          )

LG-TR-CI, INC., G-GANG, INC., ARJAN )
P. DODANI, MICHELLE A. DODANI,
ERGUN THOMAS RECEL, VICTORIA )
GEORGE, GATEWAY BANK OF
FLORIDA, BRANCH BANKING AND )
TRUST COMPANY and FRIENDS
BANK,                                       )

    Defendants.                            )

                        )

## JUDGMENT OF FORECLOSURE

THIS CAUSE came before the Court upon Plaintiff's, Wells Fargo Bank, N.A.,

Motion for Summary Judgment. The Court having reviewed the pleadings on file and the

argument of the parties and being otherwise advised in the premises, it is

ORDERED and ADJUDGED:

1.    The Note, Mortgage and Guaranties (as defined in the Complaint filed in

this action) are valid and in default.

2.    Wells Fargo Bank, N.A., whose address is 1 Independent Drive, 8th Floor,

Jacksonville, Florida, 32202 (FEI/EIN:  941347393), ~~shall recover~~ *is owed* jointly and severally

from defendants, LG-TR-CI, Inc., G-Gang, Inc., Arjan P. Dodani, Michelle A. Dodani,

Ergun Thomas Recel and Victoria George as Personal Representative of the Estate of

## EXHIBIT D

Nicholas A. George, $2,255,462.81 as principal, $267,177.67 in prejudgment interest, $13,243.12 in late charges, $4,920 in appraisal fees, $6,150 in environmental inspection fees and attorney fees and costs of $61,660.46; for the total sum of $2,608,614.06 (the "Total Owed").

3.    Wells Fargo Bank, N.A. holds a lien for the Total Owed superior to any claim or estate held by any of the defendants upon the following described property:

See attached Exhibit A hereto and made a part hereof (the

"Property").

4.    If the Total Owed with interest at the rate described in paragraph 2 and all costs accrued subsequent to this judgment are not paid immediately, the Volusia County Clerk of Court shall sell the property on __June 7 2013__, 2013, at 11:00 a.m., or as soon thereafter as the sale may proceed, to the highest bidder for cash as prescribed below, online at www.volusia.realforeclose.com, in accordance with Section 561.65, Florida Statutes and Chapter 45, Florida Statutes, and the bidding and sale procedures specified on the aforementioned website.

5.    Wells Fargo Bank, N.A. shall advance all subsequent costs of this action and shall be reimbursed for them by the Clerk if Wells Fargo Bank, N.A. is not the purchaser of the Property at the sale. If Wells Fargo Bank, N.A. is the purchaser, the Clerk shall credit Wells Fargo Bank, N.A.'s bid for the Total Owed, and with interest and costs accruing subsequent to this judgment, or such part of it as is necessary to pay the bid in full.

6.    On filing the certificate of sale, the Clerk shall distribute the proceeds of the sale, so far as they are sufficient, by paying:  first, all of Wells Fargo Bank, N.A.'s costs; second, Wells Fargo Bank, N.A.'s attorneys' fees; third, the Total Owed due to Wells Fargo

Bank, N.A. less the items paid plus interest at the rate prescribed by the note from this date to the date of the sale; fourth, creditors who have paid or by law are obligated to pay federal or state excise taxes on purchases by the licensee; and by retaining any amount remaining pending further order of this Court.

7.    On filing the certificate of sale, defendants and all persons claiming under or against them since the filing of the Complaint shall be foreclosed of all estate right, title, interest or claim in the Property.

8.    In the event the successful bidder for the Property at the foreclosure sale held in accordance with this judgment fails to deliver the full amount of the bid in cash plus the fees for such Property to the Clerk of the Circuit Court within 24 hours after the date of the foreclosure sale, the bidder will be disqualified from re-bidding on that particular sale only and the sale of such Property shall begin anew immediately, to be sold to the highest and best bidder for cash in accordance with the judgment.

9.    Wells Fargo Bank, N.A. may assign its interest in this judgment or, if Wells Fargo Bank, N.A. is the successful bidder at the public sale, its bid at the foreclosure sale without further order or direction from this Court.

10.    Jurisdiction of this action is retained to enter further orders that are proper including, without limitation, writs of possession, writs of assistance, to allow foreclosure of any junior interests omitted from this foreclosure action, overdue rent due to the Plaintiffs (and all issues raised in the pending Motion for Sanctions) and to enter a deficiency judgment.

11.    The following information is provided pursuant to Section 45.031(1)(a), Florida Statutes:

IF THIS PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THIS FINAL JUDGMENT.

IF YOU ARE A SUBORDINATE LIENHOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN 60 DAYS AFTER THE SALE. IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS.

12.    Wells Fargo Bank, N.A. may obtain the original note filed with the Court upon motion and hearing.

DONE AND ORDERED in Volusia County, Florida, this _____ day of April, 2013.

**TERENCE R. PERKINS**
**CIRCUIT JUDGE**

APR 0 1 2013

~~SIGNED AND DATED~~
Circuit Judge

cc:    Diego Handel, Esq.
       E. Lanny Russell, Esq.
       R. Brooks Casey, Esq.
       Melvin D. Stack, Esq.
       Scott W. Cichon, Esq.

830564

4

Exhibit A

The "Property" collectively and defined below:

Lots 1 through 8, inclusive, Block 12, Rogers' Seabreeze, according to the map or plat thereof, as recorded in Deed Book "O", Page 301, Public Records of Volusia County, Florida, EXCEPTING, therefrom the Southerly 12 feet thereof taken in the widening of Main Street; ALSO, Lots 5 through 7, inclusive, Block 13, Brush and Stewart's Subdivision in Seabreeze, according to the map or plat thereof, as recorded in Plat Book 2, Page 187, Public Records of Volusia County, Florida.

830564

Electro...ally Filed 11/07/2013 10:38:00 AM ET

IN THE CIRCUIT COURT, OF THE SEVENTH JUDICIAL CIRCUIT, IN AND FOR VOLUSIA COUNTY, FLORIDA

CASE NO.:   2011-32449-CICI
DIVISION:   32

| | |
|---|---|
| WELLS FARGO BANK, N.A., | ) |
| Plaintiff, | ) |
| v. | ) |
| LG-TR-CI, INC., G-GANG, INC., ARJAN P. DODANI, MICHELLE A. DODANI, ERGUN THOMAS RECEL, VICTORIA GEORGE, GATEWAY BANK OF FLORIDA, BRANCH BANKING AND TRUST COMPANY and FRIENDS BANK, | )  )  )  )  ) |
| Defendants. | ) |

## **FOURTH AMENDED NOTICE OF FORECLOSURE SALE**

Notice is hereby given that, pursuant to the Judgment of Foreclosure and the Order Granting Motion to Cancel Foreclosure Sale entered in this action, I will sell the property situated in Volusia County, Florida, described as follows to the highest and best bidder for cash, at a public sale, online at www.volusia.realforeclose.com, in accordance with the bidding and sale procedures specified on that website and the Clerk of Court's website, www.clerk.org, as well as Chapter 45, Florida Statutes:

> Lots 1 through 8, inclusive, Block 12, Rogers' Seabreeze, according to the map or plat thereof, as recorded in Deed Book "O", Page 301, Public Records of Volusia County, Florida, EXCEPTING, therefrom the Southerly 12 feet thereof taken in the widening of Main Street; ALSO, Lots 5 through 7, inclusive, Block 13, Brush and Stewart's

## **EXHIBIT E**

Subdivision in Seabreeze, according to the map or plat thereof, as recorded in Plat Book 2, Page 187, Public Records of Volusia County, Florida.

This sale shall be conducted with similar sales on March 6, 2014, which sales shall begin promptly at 11:00 a.m. Eastern Time, or shortly thereafter.

SMITH HULSEY & BUSEY

By _/s/ Nicholas W. Morcom_
Lanny Russell
Nicholas W. Morcom

Florida Bar Number 303097
Florida Bar Number 0013767
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)
nmorcom@smithhulsey.com
tcopeland@smithhulsey.com
mrivers@smithhulsey.com

Attorneys for Wells Fargo Bank, N.A.

2

**Certificate of Service**

I hereby certify that on November 7, 2013, a copy of the foregoing document was

furnished by email to:

Diego Handel, Esq.
dhandel@bellsouth.net

R. Brooks Casey, Esq.
Wright & Casey, P.A.
nicole@surfcostlaw.com
emailservice@surfcoastlaw.com


Scott W. Cichon, Esq.
Cobb Cole
Scott.Cichon@CobbCole.com

VICTORIA GEORGE
As personal representative of the Estate of
Nicholas A. George
c/o Melvin D. Stack, Esq.
Every, Stack & Upchurch
melstack@bellsouth.net



                                    _____/s/ Nicholas W. Morcom_____
                                                    Attorney


00830570.DOC

3